UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KELLI REILLY a/k/a MICHAEL RUPP, :
:
       Plaintiff :
:
   v. : CIVIL NO. 3:CV-14-1933
:
WARDEN DOMINICK DeROSE, et al., : (Judge Kosik)
:
       Defendants :

## **MEMORANDUM**

The above civil rights action pursuant to 42 U.S.C. § 1983 was filed by Kelli Reilly, also known as Michael Rupp, a transgender inmate.[1] Named as defendants are several officials and employees at the Dauphin County Prison, Pennsylvania, where the alleged incidents took place. Pending before the court are Plaintiff's motions for the appointment of counsel (Docs. 27, 34), to amend the complaint (Doc. 31) and a request for default (Doc. 24). Also pending is a motion to dismiss filed by several of the named Defendants (Doc. 21).

**I.    Allegations in the Complaint**

Plaintiff alleges that prison officials at the Dauphin County Prison, her former place of confinement, failed to protect her from multiple assaults. Named as Defendants are Dominick DeRose, Warden; Deputy Warden Nichols; Mike Welker,

---

[1] For ease of reference, the court will refer to Plaintiff as "she" for purposes of this Memorandum.

Treatment Coordinator, and Correctional Officers Doe, Mayberry and Brown.[2] (Doc. 1, Compl. 1, 5.)

Plaintiff is a "100% feminine appearing transgender person" and claims that her Rhode Island state-issued identification and United States passport reflect that she is "female." (Id. at 6.) Plaintiff was committed to the Dauphin County Prison on March 24, 2013. She states that her record documents assaults back to 2006.

On March 31, 2013, Plaintiff was housed in an open dorm setting on G-Block, where she was sexually assaulted by another inmate. (Id.) Thereafter, Plaintiff gave a request slip about the incident to Defendant Doe. Doe removed Plaintiff from the unit, and took her to the Harrisburg Hospital.

From March 31, 2013 through April 8, 2013, Plaintiff was housed on A Block. The inmate who had assaulted Plaintiff was housed 4 cells away. Plaintiff claims that this caused her severe anxiety. Plaintiff also overheard other officers and inmates joking about the assault. Plaintiff sent grievances to Defendants Welker and Nichols seeking to be removed from the male population, because she felt like she was an obvious target for further assaults, even if confined in protective custody there. Welker and Nichols denied her grievance requests, and appeals therefrom were also

---

[2] Defendants DeRose, Nichols and Welker waived service of the complaint. (Doc. 16.) Service on Defendants Doe and Mayberry were returned "unexecuted" with the notations that service on a "Doe" defendant was impossible, and there is no one employed at the Dauphin County Prison by the name of "Mayberry." (Docs. 10, 18.) It further appears that service was directed, but never attempted on Defendant Brown.

denied by Defendant DeRose and Commissioner Haste.

At the end of April 2013, Plaintiff was moved to protective custody on Block Q, where she was housed in a single cell. Another inmate who had previously assaulted another transgender inmate was housed one cell away. Plaintiff claims that she complained to staff about other inmates on the block harassing and threatening her, but no action was taken. (Id.)

On May 31, 2013, Plaintiff claims that she was punched by Inmate Ussary while using the phone. Defendant Mayberry was notified and only laughed at Plaintiff and ordered her to "lock in." Mayberry later came to Plaintiff's cell and stated that a white shirt reviewed the video and it revealed that Ussary did not strike Plaintiff. When Plaintiff tried to show Mayberry the marks on her face, Mayberry ignored her.

Despite written and verbal requests, Plaintiff was not moved from the block until 3 days later. She was moved to P-S-8 and housed alone for 2 weeks. Thereafter, she was moved to Block P-5 and placed in a cell with Inmate Craig Michael Jordon. According to Plaintiff, Jordon had been deemed a "Sexually Violent Predator" by the Commonwealth of Pennsylvania, and this is known by the staff.

On or about July 18, 2013, Plaintiff claims that she was punched by Inmate Miles, and suffered cuts and bleeding to the mouth. (Id. at 7.) Defendant Brown thereafter moved Plaintiff to "the hole" and charged her with fighting. Based on the foregoing, Plaintiff seeks injunctive and monetary relief.

## II.    Discussion

### A.    Motions for counsel

Plaintiff has filed two motions seeking the appointment of counsel in this matter. (Docs. 27, 34.) In support of the motions, Plaintiff contends she is: (1) unable to afford/secure counsel; (2) limited by her imprisonment; (3) has limited access to the law library; (4) the issues involved are complex; and (5) discovery and a trial will be likely.

There is neither a constitutional nor statutory right to counsel for civil litigants. Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2001). Congress has granted district courts the discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1)(Noting that appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1) is "discretionary"). A court's discretionary authority to appoint an attorney to represent a civil litigant (prisoner or non-incarcerated individual) only comes into play when the party is proceeding within the terms of 28 U.S.C. § 1915, *Proceedings In Forma Pauperis*, which necessarily implies the litigant's indigent status, and is made on a case-by-case basis. Tabron v. Grace, 6 F.3d 147, 157-58 (3d Cir. 1993).

The United States Court of Appeals for the Third Circuit has stated that the appointment of counsel for an indigent litigant should be made when circumstances "indicate the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to

4

the court in a complex but arguably meritorious case." Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984).

The initial determination to be made by the court in evaluating the expenditure of the "precious commodity" of volunteer counsel is whether the plaintiff's case "has some arguable merit in fact and law." Montgomery, 294 F.3d at 499. Without passing judgment as to the ultimate merits of Plaintiff's claims, for the sole purpose of these motions, the court will assume that the case has arguable merit in law and the facts.

Upon successfully clearing the above hurdle, other factors to be examined are:

1. The plaintiff's ability to present his or her own case;

2. The difficulty of the particular legal issues;

3. The degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;

4. The plaintiff's capacity to retain counsel on his or her own behalf;

5. The extent to which a case is likely to turn on credibility determinations; and

6. Whether the case will require testimony from expert witnesses.

Montgomery, 294 F.3d at 499 (citing Tabron, 6 F.3d at 155-57).

Plaintiff's motions fail to set forth any special circumstances or factors that would warrant the appointment of counsel at this time. Tabron, 6 F.3d at 155-56.

The pleadings submitted by Plaintiff so far are clearly written and detail the claims she desires to pursue. It is evident in reviewing Plaintiff's submissions thus

far, that she is literate and capable of litigating this action on her own. Moreover, the legal issues involved are not complicated. While Plaintiff claims that access to the law library is limited, she has since been transferred to a different prison. Moreover, any concerns with respect to the necessity of discovery or trial preparation are premature at this juncture in light of Defendants' pending motion to dismiss. It cannot be said, at least at this point, that Plaintiff will suffer substantial prejudice if she is required to proceed with the prosecution of this case on her own. This Court's liberal construction of pro se pleadings, Haines v. Kerner, 404 U.S. 519 (1972), coupled with Plaintiff's apparent ability to litigate this action, weigh against the appointment of counsel. The pending motions for counsel will be denied. If future proceedings demonstrate the need for counsel, the matter may be reconsidered either *sua sponte* or pursuant to a properly filed motion.

### B.     Motion for default

Plaintiff has filed a document entitled "Declaration for Entry of Default." (Doc. 24.) Without unnecessary elaboration, this request will be denied for the following reasons. First, only three (3) of the six (6) Defendants have been served with the complaint. These three Defendants (DeRose, Nichols and Welker) timely filed a motion to dismiss the complaint on December 23, 2014.[3] (Doc. 21.) Because

---

[3] Waivers of service were returned by DeRose, Nichols and Welker on November 26, 2014. (Doc. 16.) According to the waiver, Defendants had 60 days from October 24, 2014 within which to respond to the complaint. The motion to dismiss, filed on December 23, 2014, was therefore timely filed.

6

Defendants Doe, Mayberry and Brown have never been served with the complaint, any request for default is improper.

**C.    Motion to amend**

Also pending on the docket is Plaintiff's motion to amend the complaint to substitute "Jane Doe 2" for Defendant Mayberry.  (Doc. 31.)  Service was attempted on Defendant Mayberry, and was returned with the notation that no such individual was employed at the Dauphin County Prison.  As such, Plaintiff seeks to substitute "Jane Doe 2" as a defendant until she can properly identify said defendant.

It is well-established that the district court can deny leave to amend a complaint if the proposed amendment would be futile and if the complaint, as amended, would not survive a motion to dismiss.  See Smith v. National Collegiate Athletic Ass'n, 139 F.3d 180, 190 (3d Cir. 1998)(citing In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1434 (3d Cir. 1997)).  As explained below, because Plaintiff has failed to exhaust her claims against Defendants, there is no point in permitting the amendment proposed by Plaintiff.   Accordingly, the motion to amend will be denied.

**D.    Motion to dismiss**

Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just

speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks Cnty. Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Se. Pa. Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(quoting Twombly, 550 U.S. at 556).

"To decide a motion to dismiss, courts generally consider only the allegations

contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)(citations omitted); see also Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." Pension Benefit, 998 F.2d at 1196.

Analysis

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000). It has been made clear that the exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000)(same). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Although failure to exhaust administrative remedies is generally an affirmative defense to be pleaded by the defendant, it has been recognized that a district court has

the inherent power to dismiss <u>sua sponte</u> a complaint which facially violates a bar to suit. See <u>Ray v. Kertes</u>, 285 F.3d 287, 295 n. 5 (3d Cir. 2002)(citing <u>Booth</u>, 206 F.3d at 293 n. 2)(noting that "Booth concedes that he did not avail himself of either the intermediate or final review process") and <u>Nyhuis</u>, 204 F.3d at 66 (stating that plaintiff "argues that he did not avail himself of the administrative process because it could not provide him with two of the three forms of relief that he seeks in the present action")); <u>see also</u> <u>Perez v. Dunken</u>, Civil No. 3:13-CV-0819, 2013 WL 1346379 (M.D. Pa. April 3, 2013)(Munley, J.).

"[I]t is beyond the power ... of any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." <u>Nyhuis</u>, 204 F.3d at 73 (quoting <u>Beeson v. Fishkill Com Facility</u>, 28 F.Supp.2d 884, 894-95 (S.D. N.Y. 1998). Proper exhaustion is also required prior to commencing any suit in federal court. <u>Woodford v. Ngo</u>, 548 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure in the course of its proceedings." <u>Id</u>. at 90-91. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. <u>Spruill v. Gillis</u>, 372 F.3d 218, 227-32 (3d Cir. 2004).

In the complaint, Plaintiff states that a prisoner grievance procedure existed at the Dauphin County Prison, and that has been fully exhausted with respect to the

claims in the complaint. In specifying what steps were taken, Plaintiff states that she "[s]ubmitted requests and appeals to entire chain of command, ending at Commissioner Haste." She further states that "[a]ll were denied." (Doc. 1 at 2.)

The grievance appeal process that Dauphin County Prison inmates are required to follow, as set forth in the Inmate Handbook, involves four (4) steps: (1) the submission of a grievance for review and determination by the Warden; (2) an appeal of any decision to the Chairman of the Dauphin County Prison Board of Inspectors; (3) an appeal of the Chairman's decision to the full Dauphin County Prison Board of Inspectors; and (4) an appeal from the Prison Board's decision to the Dauphin County Solicitor. (Doc. 25, Ex. 1, Dauphin County Prison Grievance Appeal Process.) This court also takes judicial notice of Dauphin County Prison's grievance procedures as set forth in the case law in this district. See Sawyers v. Brown, No. 3:12-CV-1694, 2014 WL 407337, at *2 (M.D. Pa. Feb. 3, 2104); Funk v. DeRose, No. 3:CV-12-2282, 2012 WL 6966712, at *8 (M.D. Pa. Nov. 28, 2012), report and recommendation adopted, 2013 WL 393868 (Jan. 31, 2013).

Plaintiff admits that there is an administrative grievance procedure available, and that the grievances filed were only taken as far as the Chairman of the Dauphin County Prison Board of Inspectors, Commissioner Haste. (Doc. 1, Compl. at 2.) It is apparent not only from the face of the complaint, but also from Plaintiff's failure to address Defendants' failure to exhaust argument in their pending motion to dismiss, that the claims raised in this action have not been properly exhausted. Plaintiff failed

11

to appeal any denial of the grievances filed to the remaining two levels available – the full Dauphin County Prison Board of Inspectors and the Dauphin County Solicitor. As such, Defendants' motion to dismiss will be granted on the basis of failure to exhaust in accordance with 42 U.S.C. § 1997e(a).[4] See Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002).

      An appropriate order follows.

---

[4] Although three of the Defendants have not been identified and/or served with the complaint in this action, pursuant to the court's ability to screen the complaint under 28 U.S.C. § 1915(e), the claims against said Defendants will also be dismissed on the basis of failure to exhaust. Service of the complaint on said individuals would be a waste of judicial resources in that the claims alleged therein are subject to dismissal on the basis of failure to state a claim due to Plaintiff's failure to exhaust available administrative remedies.